# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVON R. HAYES,<br>                Petitioner,<br><br>vs.<br><br>MICHAEL WENEROWICZ<br>*SUPERINTENDENT FOR THE STATE*<br>*CORRECTIONAL INSTITUTION AT*<br>*GRATERFORD And;* KATHLEEN G.<br>KANE *ATTORNEY GENERAL FOR THE*<br>*COMMONWEALTH OF PENNSYLVANIA,*<br>                Respondents. | Civil Action No. 13-589<br>Chief Magistrate Judge Maureen P. Kelly |

## **OPINION**

Davon Renee Hayes ("Petitioner"), represented by privately retained counsel, has filed this Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Petition"), seeking to attack his state court convictions for second degree murder and robbery for which Petitioner was sentenced to life in prison without the possibility of parole. ECF No. 1.

## I. BACKGROUND

During the nonjury trial of Petitioner in the Court of Common Pleas of Allegheny County from February 28, 2005 to March 2, 2005, detectives testified that Petitioner confessed his involvement in the robbery of a local store which resulted in the shooting of the store owner. Detective Logan was the officer who interrogated Petitioner and Detective Logan testified that Petitioner admitted to agreeing with two other males to rob the store and that Petitioner would act as a lookout. During the nonjury trial, Petitioner took the stand in his own defense and asserted that, during his interrogation, he initially denied any involvement but because of

Detective Logan's haranguing of Petitioner, Petitioner told Detective Logan "[w]hat he [i.e., Detective Logan] wanted to hear." State Court Record ("SCR"), Notes of Testimony ("N.T.") at 144, line 18. Petitioner also testified that what he told Detective Logan about Petitioner's involvement, i.e., about him going to the store and agreeing to rob the store, was all a lie to Detective Logan and just part of telling Detective Logan what he wanted to hear. Id. at 144, lines 23-25. The Honorable John A. Zottola, who presided over the nonjury trial, disbelieved Petitioner when he stated that he had lied to Detective Logan about his involvement. Judge Zottola found Petitioner's confession to Detective Logan credible and found Petitioner guilty of second degree murder and robbery.

Petitioner now brings this Petition, which, he concedes through his counsel, violates the one year statute of limitations. However, Petitioner contends that he has shown "actual innocence" so as to meet a judicially created exception to the AEDPA statute of limitations.

Because Petitioner failed to carry his burden to show actual innocence of the crimes, the Petition will be dismissed. Because jurists of reason would not find the denial of habeas relief debatable, a certificate of appealability will likewise be denied.

## II. PROCEDURAL HISTORY

Attorney Mark Rubenstein initiated these proceedings by the filing of the instant Petition. The two issues raised were:

> A. Mr. Hayes, was denied his Sixth Amendment right to the effective assistance of counsel at trial because Trial Counsel did not thoroughly investigate or subpoena several alibi witnesses. These witnesses would have corroborated Mr. Hayes' claim that he was not involved in the robbery. Furthermore, the testimony of these witnesses would have bolstered Trial Counsel's attempts to show that Mr. Hayes' inculpatory statement was not credible but the product of Mr. Hayes' severe learning disability, low intelligence and his desire to tell the detectives what they wanted to hear so that he could be released. By permitting PCRA counsel to withdraw and implicitly adopting PCRA counsel's determination that Trial Counsel was not ineffective for failing to investigate Mr. Hayes' alibi

witnesses, Judge Zottola rendered a decision that was an unreasonable application of clearly established federal law.

B. Mr. Hayes was denied his Sixth Amendment right to the effective assistance of counsel at trial because Trial Counsel failed to challenge the propriety of Mr. Hayes' arrest at the suppression hearing. The arresting officers testified that they arrested Mr. Hayes on an outstanding juvenile warrant. The Commonwealth did not produce a copy of the alleged juvenile warrant. None of the arresting officers testified that they ever saw this juvenile warrant. The only testimony offered at the suppression hearing consisted of hearsay Detective Nutter, who testified that he spoke with Mr. Hayes' juvenile probation officer to confirm the existence of the warrant. Trial Counsel did not object to the officers' hearsay testimony concerning the warrant or otherwise challenge the propriety of the warrant. PCRA Counsel acknowledged that Trial Counsel was deficient for failing to properly litigate this issue or preserve it for direct appeal, but reasoned that Mr. Hayes was not prejudiced by Trial Counsel's errors in this regard because Judge Zottola 's finding that Mr. Hayes' waiver of his Miranda rights was knowing and intelligent would purge the taint of any potential illegal arrest and render his statement admissible regardless of a Fourth Amendment violation. By permitting PCRA counsel to withdraw and implicitly adopting PCRA counsel's determination that Trial Counsel's deficient performance did not prejudice Mr. Hayes, Judge Zottola rendered a decision that was an unreasonable application of clearly established Federal law.

ECF No. 1 at 15. Respondents filed an Answer in which they raised, *inter alia*, the AEDPA statute of limitations, asserted that Petitioner procedurally defaulted his two claims, and also denied that Petitioner was entitled to relief on the merits. ECF Nos. 5 - 7. Respondents also attached copies of much of the state court record to their Answer. Respondents caused the original state court record to be transmitted to this Court. Petitioner filed a traverse claiming that he had new evidence of his actual innocence so as to overcome his violation of the AEDPA statute of limitations. ECF No. 10. All parties have consented to the plenary exercise of jurisdiction by the Magistrate Judge. ECF Nos. 8, 9.

## III. APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Respondents pointed out in their Answer that this petition is untimely under AEDPA. As relevant here, AEDPA requires that state prisoners file their federal habeas petition within one year after their conviction became final.[1] Specifically, AEDPA provides that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> . . . .
>
>   (2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

A habeas respondent has the burden of affirmatively pleading AEDPA's statute of limitations. Hill v. Braxton, 277 F.3d 701, 705 (4th Cir. 2002). However, it is appropriate - where the habeas petitioner has been put on notice of a statute of limitations defense - to place

---

[1] Although AEDPA provides three other potential starting points for the running of its one year limitations period, Petitioner has not argued for the application of any of those three other starting points. Given that the Petition is counseled, we deem Petitioner to have affirmatively waived any argument as to the applicability of those other starting points.

some burden on him or her to show why the petition is not untimely. See, e.g., Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002) ("once a petitioner is given adequate notice and opportunity to respond to allegations that his petition is subject to dismissal pursuant to AEDPA's statute of limitations, petitioner has the burden of providing an adequate response"), *abrogation on other grounds recognized in*, Moreno v. Harrison, 245 F. App'x 606 (9th Cir. 2007). See also Jackson v. Secretary for Dept. of Corrections, 292 F.3d 1347, 1349 (11th Cir. 2002); Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002)("The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed.").

In Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir. 2000), the United States Court of Appeals for the Second Circuit explained the important purposes that AEDPA's statute of limitations serves. In Acosta, the Court of Appeals stated that:

> The statute of limitation in Section 2244(d) "was Congress' primary vehicle for streamlining the habeas review process and lending finality to state convictions." *Walker v. Artuz*, 208 F.3d 357, 361 (2d Cir.2000); *cf. Schlup v. Delo*, 513 U.S. 298, 322 (1995) (stating that on collateral review, courts should "accommodate [ ] ... the systemic interests in finality ... and conservation of judicial resources"). The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time. Like the other procedural bars to habeas review of state court judgments, the statute of limitation implicates the interests of both the federal and state courts, as well as the interests of society[.]

Id. at 123.

## IV. DISCUSSION

### A. The Petition is Untimely.

Although Petitioner concedes that the Petition is facially untimely as measured from the date his conviction became final, it is important to actually calculate how the Petition is untimely, given that it appears the Respondents made a minor error in the calculating of the AEDPA statute of limitations, which does not affect the outcome. Petitioner's conviction became final on July 8, 2008, i.e., 90 days after the Pennsylvania Supreme Court, on April 9, 2008, denied his Petition for Allowance of Appeal during Petitioner's direct appeal proceedings. ECF No. 5 at 15. Petitioner filed a timely Post Conviction Relief Act ("PCRA") Petition on January 29, 2009 ("the First PCRA Petition"). Id. Between July 8, 2008 and January 29, 2009, a total of 205 days of AEDPA's 365 day statute of limitations were used up, leaving only 160 days remaining.[2] Petitioner's First PCRA Petition ceased to be pending on January 26, 2011, 30 days after the Pennsylvania Superior Court denied Petitioner's request for reconsideration, where Petitioner did not file a Petition for Allowance of Appeal with the Pennsylvania Supreme Court. Id. In order for Petitioner's instant Petition to be filed timely in this Court, Petitioner needed to file his Petition no later than July 5, 2011. However, the Petition in this Court was not filed until April 9, 2013. ECF No. 1. The instant Petition was filed over 19 months late.

We note that at some point in time Petitioner retained present counsel. On April 11, 2011, Petitioner's present counsel filed a Second PCRA Petition in the state courts rather than file a habeas petition in this Court. ECF No. 5 at 15. At that time, the AEDPA statute of limitations had not yet run and would not run for another nearly three months. The record is

---

[2] Respondents assert that a mere 197 days passed between July 8, 2008 and January 29, 2009. ECF No. 5 at 15. Given how tardy the Petition is, the difference between the Respondents' calculation of the number of days and this Court's calculation, is of no significance.

silent as to why Petitioner's present counsel failed to file a protective habeas petition in this Court and request a stay and abey of the federal habeas petition while pursuing the Second PCRA Petition.[3] See Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005) ("A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.").

Having failed to file a timely Petition in this Court, Petitioner must now seek to establish his actual innocence of the convictions in order for this Court to overlook Petitioner's violation of the AEDPA statute of limitations and to address his two claims on the merits.

**B. Actual Innocence is an Exception to the AEDPA Statute of Limitations.**

As pointed out by the Petitioner, the United States Supreme Court has held that there is an "actual innocence" exception to the AEDPA statute of limitations such that where a federal habeas petitioner makes an adequate showing of actual innocence, the federal habeas court may consider the habeas petition on the merits notwithstanding that the Petition violates the one year AEDPA statute of limitations. McQuiggen v. Perkins, 133 S.Ct. 1924 (2013). In McQuiggen, the Supreme Court declared:

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district

---

[3] Although a "properly filed" PCRA Petition can toll the AEDPA statute of limitations, because the state courts found that the Second PCRA Petition was untimely filed under state law, the Second PCRA Petition cannot toll the AEDPA statute of limitations. Pace, 544 U.S. at 413 ("[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings' including 'time limits upon its delivery'")(*quoting* Artuz v. Bennett, 531 U.S. 4, 8 (2000)); Merritt v. Blaine, 326 F.3d 157, 165-66 & n. 6 (3d Cir. 2003) (holding that because petitioner's second PCRA petition was untimely under state law, it was not "properly filed" for purposes of AEDPA).

7

> court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S., at 329, 115 S.Ct. 851; *see House*, 547 U.S., at 538, 126 S.Ct. 2064 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S., at 332, 115 S.Ct. 851.

Id. at 1928. In order to successfully invoke the "actual innocence" exception, which is also known as, the "miscarriage of justice" exception[4] a petitioner must:

> satisfy a two-part test in order to obtain review of otherwise procedurally barred claims. First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial. *Schlup*, 513 U.S. at 327-28. Second, the petitioner must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id*. at 327.

Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001), cert. denied, 498 U.S. 881 (2001). It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that. In Schlup, the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." Schlup, 513 U.S. at 329.

The first prong of the two part test, i.e., whether the proffered evidence is new, provides that "evidence is new only if it was not available at trial[.]" Amrine v. Bowersox, 238 F.3d at 1028.[5] Petitioner's claim of actual innocence fails on this ground.

---

[4] Lenhart v. Rozum, Civ.A. No. 10–218J, 2014 WL 807995, at *16 (W.D. Pa., Feb. 28, 2014) ("The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard, which applies 'when a constitutional violation probably has caused the conviction of one innocent of the crime.'") (quoting, United States v. Sorrells, 145 F.3d 744, 749 n.3 (5th Cir. 1998)).

### C. Petitioner's Evidence is Not "New."

In order to carry his burden of proving new evidence of actual innocence, Petitioner relies on three affidavits from Petitioner's friends all of whom state that Petitioner was with them at the time of the store robbery. ECF No. 1 at ¶ 79. In addition, Petitioner relies on an affidavit from Attorney Mark Rubenstein who avers that he spoke with yet a fourth potential alibi witness who "corroborated" Petitioner's alibi but because of alleged animosity toward Petitioner refused to appear in court or sign an affidavit. Id. at ¶ 80. However, Petitioner's argument necessarily concedes that all four of the alleged alibi witnesses who claim that Petitioner was with them, constituted evidence of Petitioner's alibi that existed at the time of trial. Indeed, Petitioner's very argument here is that there existed alibi witnesses at the time of trial of which he made his trial counsel aware but that his trial counsel failed to investigate his alibi. Specifically, Petitioner argues that:

> Mr. Hayes can present credible alibi witnesses who were with him at the time of the shooting and who could place him in another location away from the scene of the crime. Mr. Hayes told his trial attorney, Assistant Public Defender Kathleen A. Gribbins (hereinafter "Trial Counsel"), about these witnesses and repeatedly implored her to investigate his alibi and subpoena the witnesses for his trial. Trial Counsel seemingly did little, if anything, to investigate the alibi and did not subpoena the witnesses for trial, instead telling the incarcerated Mr. Hayes that he should contact them himself and tell them to appear at his trial. Under the facts and circumstances of this case, Mr. Hayes submits that his evidence of actual innocence will make clear that the verdict below was not a reliable determination of guilt but the result of Trial Counsel's ineffectiveness.

---

[5] There does appear to be one narrow exception to the requirement of producing new evidence in order to successfully demonstrate a "miscarriage of justice." See, e.g., United States v. Garth, 188 F.3d 99 (3d Cir. 1999). However, for reasons explained in Sweger v. Chesney, 294 F.3d 506, 523 n.18 (3d Cir. 2002) and Gale v. Rozum, No. 06-CV-1266, 2006 WL 2092572 (M.D.Pa. July 25, 2006), the narrow Garth exception does not apply here. Whereas in Garth a subsequent interpretation of a criminal statute by the United States Supreme Court may have rendered the petitioner therein not guilty of the crime, no such factual scenario is present here.

ECF No. 10 at 4. See also Unsigned Affidavit of Petitioner, ECF No. 1-2 at ¶ 7 (listing the very same four alleged alibi witnesses as Petitioner now relies on herein, namely, Tyru Smith, Princess Murphy, Jalyn Thomas and Miracle Smith).

Because the alibi evidence was concededly available at the time of the trial, it cannot constitute "new" evidence of actual innocence. McQuiggen, 133 S.Ct. at 1935 ("To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the **new** evidence.'" McQuiggen, 133 S.Ct. at 1935 (quoting Schlup, 513 U.S. at 327) (emphasis added); Ross v. King, No. 1:13cv70–HSO–RHW, 2013 WL 6048156, at *3 (S.D.Miss. Nov. 15, 2013) ("[petitioner] has presented no new evidence, he simply argues the DNA evidence which existed at the time he pled guilty is evidence of his innocence."); James v. Ratman, No. CV 11–8693–ABC(MAN), 2013 WL 5840278, at *8 (C.D. Cal. Oct. 28, 2013) (noting that statement of which petitioner "was fully aware ... before and during his trial ... cannot be said to constitute the requisite 'evidence claimed to have been wrongly excluded or to have become available only after the trial' ") (quoting Schlup, 513 U.S. at 328).[6] Accordingly, Petitioner fails to carry his burden to show that he has "new" evidence so as to satisfy the first prong of the actual innocence test.

---

[6] For present purposes of deciding whether the evidence is "new," we utilize the so-called "modified Amrine definition" of "new evidence" as set forth in Houck v. Stickman, 625 F.3d 88 (3d Cir. 2010). However, because the allegedly new evidence presented here was known to Petitioner's trial counsel at the time of the trial, we do not find the evidence to constitute "new evidence" within the contemplation of Houck. See id. at 94 ("we are inclined to accept the *Amrine* definition of new evidence with the narrow limitation that if the evidence was **not discovered** for use at trial because trial counsel was ineffective, the evidence may be regarded as new provided that it is the very evidence that the petitioner claims demonstrates his innocence.") (emphasis added).

10

**D. Petitioner Fails to Show That No Reasonable Juror Would Have Convicted Him.**

Even if however, such evidence could qualify as "new," Petitioner fails to show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Amrine, 238 F.3d at 1029. The focus under the "actual innocence" exception is on establishing actual innocence as opposed to legal innocence, and so this Court is not bound to consider only the evidence introduced at a habeas petitioner's criminal trial. See Schlup, 513 U.S. at 327 - 28, wherein the court held that "[i]n assessing the adequacy of petitioner's showing [of actual innocence], therefore, the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on 'actual innocence' allows the reviewing [habeas] tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial." Indeed, the Supreme Court explained more fully what it meant by allowing a court to consider evidence not heard at trial when it declared that

> The habeas court must make its determination concerning the petitioner's innocence "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial."

Id. at 328. In conducting this analysis, the court is guided by the principle that a "district court must not use its independent judgment as to whether, in light of new evidence, reasonable doubt exists. Rather, the district court must 'make a probabilistic determination about what reasonable, properly instructed jurors would do.'" Abu-Jamal v. Horn, No. Civ.A. 99-5089, 2001 WL 1609690, at *9, (E.D. Pa. Dec. 18, 2001), *aff'd,* 520 F.3d 272 (3d Cir. 2008), *cert. granted and judgment vacated on other grounds by*, 558 U.S. 1143 (2010).

Hence, we weigh the evidence of the three affiants, and counsel's affidavit, recounting statements by another individual who refused to provide an affidavit, all of which say Petitioner was at a park with them at the time of the robbery and shooting, against the evidence of

Petitioner's guilt. We note however that such affidavits were not given until, at the earliest, February 2011, ECF No. 7-5 at 10, with the latest affidavit being given in April 2011, id., at 12, notwithstanding the fact that Petitioner contends he informed his trial counsel of his alibi witnesses prior to trial which occurred in March 2005. The Supreme Court in McQuiggen specifically permitted federal habeas courts, in assessing the credibility of new evidence, to consider any delay in presenting evidence of actual innocence. McQuiggen, 133 S.Ct. at 1936 ("The timing of such a petition, however, should seriously undermine the credibility of the actual innocence claim.").

We find that the timing of the affidavits, coming nearly six years after the trial, seriously undermines the credibility of the actual innocence claim. We further note that notwithstanding Petitioner's assertion that he had credible alibi witnesses, the record before this Court indicates that Petitioner's trial counsel did indeed attempt to contact these alleged alibi witnesses prior to trial but they proved to be elusive and/or non-cooperative.

In a series of letters exchanged between Petitioner and his trial counsel, it becomes apparent that Petitioner's alleged alibi witnesses were either not cooperative or not able to be located.[7] We find that the delay in Petitioner's producing of these affidavits until 2011 weighs

---

[7] In a letter dated October 19, 2004 to Petitioner from trial counsel, trial counsel wrote:

> Additionally you should know that I have tried repeatedly to contact Princess Murphy, but have been unable to do so in the past week and a half. . . .
>
> …. Naturally your character witnesses and other witnesses will be available for trial. This is the first time I am hearing of a problem with the fact that my investigators are white and they are scaring your black witnesses. Kindly let me know which witnesses are unable to speak to my white investigators and I will make arrangements for other investigators to speak with them.

ECF No. 7-5 at 19. We note that the first sentence of the second paragraph quoted above was marked with a highlighter and consequently rendered illegible on the copy of the letter found at
(. . . footnote continued next page)

against the credibility of the affidavits within the contemplation of McQuiggen. This is especially so in light of the fact that Petitioner proved quite active in participating in the preparation of his defense and his appellate and PCRA proceedings as evidenced by the record before this Court. Given the level of his active participation, it is incredible that he would not protest the lack of alibi witnesses, if, in fact, he had expected alibi witnesses to be produced. Of particular significance, we take note that Petitioner himself did not testify to an alibi when he took the stand in his own defense. The record before this Court suggests that the proposed alibi

---

ECF No. 7-5 at 19. However, the original state court record contains a copy of such letter where that sentence is legible.

The second letter is the letter of October 28, 2004 to Petitioner from Trial Counsel wherein Trial Counsel wrote:

> I was happy to receive the list of witnesses from you, and will have my investigators serve subpoenas on these people at the appropriate time. Since your case is not listed until February, and we don't want them to be lost, we will probably wait until a little closer to that date to serve them. However, as far as individuals who [sic] full addresses we do not know, please be advised that we will begin a search for them immediately, and they will be subpoenaed.
> 	I believe you know that I have already spoken to Johanna and Chad Collins and Princess Murphy, and they have all given me valuable information. We need to talk about making a final decision on whether or not you wish to pursue an alibi defense because of the way your alibi witnesses will be questioned at trial.
> 	Okay, I know think [sic] I understand what you are saying about your witnesses. All of my investigators should have proper ID. And I will be sure to mention to them that they must show it when interviewing witnesses on your list. Where we have phone numbers I can also try leaving messages that they will be contacted but it has been my experience that, where you are dealing with juvenile witnesses, their parents will often interfere. It is sometimes best to contact the juvenile witnesses directly in person. I do hope you realize that any witness is intent [sic] on attending your trial, can simply walk in without a subpoena.

ECF No. 7-5 at 20-21. Again, certain portions of the October 28, 2004 letter are highlighted, rendering them illegible on the docket, but again, the original state court record contains a copy of the letter that is legible.

witnesses were either not cooperative, not able to be located or, importantly, that there was a strategic decision made not to pursue an alibi defense.

There is record evidence suggesting that there was a strategic decision not to pursue alibi witnesses. During the colloquy between Judge Zottola and Petitioner, occurring immediately before the nonjury trial started, the following exchange took place between Petitioner and Judge Zottola:

> JUDGE ZOTTOLA: Are you satisfied with her [i.e., Trial Counsel's] representation.
>
> DEFENDANT HAYES: Yes.
>
> JUDGE ZOTTOLA: Okay. Early on you sent me letters and you sent Judge Kelly letters indicating some dissatisfaction with your counsel. I forwarded those letters to Ms. Cribbins because I was concerned about that. Ms. Cribbins indicated to this Court, I don't know whether you had discussion with her about it, that she felt she could fairly and adequately represent you as well as legally represent. And I wanted you to know that.
> Is that correct, Ms. Cribbins?
>
> ATTORNEY CRIBBINS: Yes.
>
> JUDGE ZOTTOLA: Are you satisfied with counsel?
>
> DEFENDANT HAYES: Yes, I am.

SCR N.T. at p. 111, lines 22 - 25 – p. 112 lines 1 - 17. If Petitioner were dissatisfied that no alibi witnesses were going to be called or none were present in the courtroom at the time of his colloquy which occurred immediately before his trial, he could have objected then but, tellingly, he did not. Such failure supports the inference that he and his trial counsel decided not to pursue an alibi defense. When he took the stand in his own defense, Petitioner did not testify as to an

alibi or that he was with any of his alleged alibi witnesses at the time of the crime. Accordingly, in light of the foregoing, we find the affidavits to be of questionable credibility.[8]

We now consider the evidence of Petitioner's guilt. The evidence of Petitioner's guilt includes testimony of two police officers that Petitioner confessed in their presence, to participating in the robbery, even though Petitioner denied on the stand that he made such a confession and even though he denied a second police officer was present in the interrogation room where he confessed. The trial court, sitting as a fact finder, simply did not believe Petitioner when he denied that he made a confession to the police officers and instead credited the testimony of the two officers. The evidence of Petitioner's guilt includes the fact that Petitioner's confession, which was summarized and reduced to writing and which was signed by Petitioner, included information that was not known to the public. There were at least two pieces

---

[8] If we were to reach the merits of Petitioner's two claims of trial counsel's ineffectiveness, and even if we conducted *de novo* review of such claims, we would deny those claims on the merits. Our recounting of the evidence concerning trial counsel's efforts to locate the alibi witnesses and trial counsel's efforts to have her investigators interview Petitioner's alleged alibi witnesses and the evidence of record suggesting that there was a strategic decision not to call alibi witnesses would be more than sufficient to sustain the presumption that trial counsel acted reasonably. United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995) ("counsel is presumed effective . . . . we are mindful of the strong presumption that counsel's performance was reasonable"). Given the record's silence as to any evidence of trial counsel lacking a reasonable basis for not presenting the alibi witnesses, Petitioner fails to sustain his burden to rebut the presumed reasonableness of trial counsel's actions.

As to the second ground for relief, asserting that trial counsel was ineffective for failing to challenge the propriety of Petitioner's arrest pursuant to a juvenile warrant that was never physically produced at trial or entered into evidence, we find the claim meritless. Petitioner himself admitted on the stand that, at the time of his arrest, he knew that he was wanted on an arrest warrant. SCR N.T. at 57, lines 2 to 7 ("On October 10, 2003, 2:30 probably, I'm in Omega Park. I'm arguing with a friend of mine. A couple of my friends ran. I turn around. I have four officers in my face. I don't know what their reason is. I know I'm wanted for a warrant though. They said I was under arrest for a juvenile warrant."). Hence, Petitioner conceded that he was wanted on a warrant. Thus, Petitioner cannot show that there was no warrant in existence at the time of his arrest so as to establish this claim has any merit. Secondly, given his admission, he cannot show that he was prejudiced by the lack of the physical production of the warrant into evidence. Accordingly, neither claim of ineffectiveness provides a ground for relief in this federal habeas proceeding.

of information that were not known to the public that Petitioner's confession included. First, Petitioner indicated that the gun shown him by one of his accomplices/co-conspirators before entering the store was a "deuce-deuce" which apparently meant a .22 caliber gun. SCR, N.T. at 139, lines 3 – 8. In fact, the gun used to kill the victim was a .22 caliber gun. Secondly, in his confession, Petitioner indicated that when they entered the store, they were wearing masks, which alerted the store owner who attempted to pull out his own gun and that the store owner and one of Petitioner's co-conspirators struggled over the store owner's gun. When the police processed the scene of the crime, they found a gun near the victim that was not fired. Apparently, the fact that the victim also had a gun was not public information. In her summation at the end of the nonjury trial, the prosecutor specifically pointed out these corroborating facts:

> There is [sic] a number of specifics that Mr. Hayes gives in his statement that's corroborated by the scene evidence that was provided by Detective Kraeer. He gave specifics about the type of weapon that was used, that it was a .22. We then have two .22 caliber casings that are found at the scene. That Dr. Levine by stipulation testified that they came from the same gun.
>     He also gave specifics about the victim being armed and that the gun jammed[9] and that the officers found a 9 millimeter weapon under his foot. And Dr. Levine's lab report also indicates there is a round in the chamber that was obviously not fired. These are specifics that corroborate a statement that the defendant is now attempting to deny.

SCR, N.T. at 159, lines 1 – 17.

Weighing all of this evidence of Petitioner's guilt against the belatedly filed affidavits of an alleged alibi, and in the context of the whole record before this Court, and making "a probabilistic determination about what reasonable, properly instructed jurors would do"

---

[9] While the prosecutor stated that Petitioner indicated in his confession that the victim's gun jammed, our review of the record does not reveal where such testimony was given concerning Petitioner's confession. The record does not appear to contain Petitioner's written confession.

16

Goldblum v. Klem, 510 F.3d 204, 226 (3d Cir. 2007) (quoting Schlup, 513 U.S. at 329), we find that Petitioner failed to carry his burden to show it was more likely than not that no reasonable juror would have found Petitioner guilty in light of the alibi evidence.[10]

## V. CONCLUSION

For the reasons set forth herein, the Petition is denied. Because we find jurists of reason would not find the foregoing debatable, we deny a certificate of appealability.

BY THE COURT:

*s/ Maureen P. Kelly*
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Date:   April 13, 2015

cc:   All Counsel of Record via CM-ECF

---

[10] Petitioner's request for an evidentiary hearing concerning the statute of limitations, made in his Reply, ECF No. 10 at 14, is denied as we do not find an evidentiary hearing necessary to resolve the issue of actual innocence. Likewise, Petitioner's request to conduct discovery, also made in the Reply, id. at 13, is denied given that we do not find discovery is necessary in order to resolve this case.